**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **KENNETH KUCK, and ANTHONY JULIANO, Individually, and on Behalf of All Others Similarly Situated,** )<br>)<br>)<br>) | |
| **Plaintiff,** ) | |
| )<br>**v.** ) | **Civil Action No. 2:17-cv-04769-ADS-** |
| ) | **GRB** |
| **PLANET HOME LENDING, LLC and MICHAEL DUBECK,** )<br>)<br>) | |
| **Defendants.** )<br>)<br>) | |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT**

## I.    INTRODUCTION

Plaintiffs seek preliminary approval of their proposed class and collective action settlement with Defendants Planet Home Lending, LLC and Michael Dubeck (collectively "Defendants"). Subject to Court approval, Plaintiffs have settled their claims against Defendants for $412,500.00. This proposed settlement ("Settlement")[1] resolves all wage claims of the Named Plaintiffs and the Class Members against Defendants.

The proposed settlement satisfies all of the criteria for preliminary settlement approval under the Federal Rules of Civil Procedure and the Fair Labor Standards Act. Accordingly, Plaintiffs request that the Court grant preliminary approval of the proposed settlement, provisionally certify the New York Class and FLSA Collective (as those terms are defined in the

---

[1] A copy of the Settlement Agreement is attached as Exhibit 1 to the Declaration of Erik H. Langeland in support of this motion ("Langeland Decl.").

Agreement, collectively, the "Settlement Class" or "Class Members"), direct distribution of the notices of the settlement annexed to the Agreement, and schedule a final approval hearing.

## II.    FACTUAL BACKGROUND

This case involves allegations that Defendants failed to pay overtime by requiring Plaintiffs who worked at Defendants' offices in Melville, New York between August 15, 2011 and the present, and Plaintiffs who worked in Tampa, Florida and/or Melville, New York between August 13, 2015 and the present to work off-the-clock. Plaintiffs allege that Defendants maintained a policy, pattern, and practice of refusing to pay any additional compensation for work performed in excess of 40 hours per week, in violation of federal and state labor laws.

Plaintiffs have prosecuted this case vigorously and efficiently. Plaintiffs filed their Complaint on August 15, 2017. The Complaint named Planet Home Lending, LLC and Michael Dubeck as Defendants. Plaintiffs asserted claims under the Fair Labor Standards Act (FLSA) and New York Labor Law (NYLL). Defendants moved to dismiss, claiming that the Complaint failed to allege the FLSA violations with adequate specificity. Plaintiffs amended their Complaint, mooting Defendants' motion. Defendants filed another motion to dismiss, claiming that the Amended Complaint remained deficient. The Court denied Defendants' motion, ruling that the motion was moot. Defendants moved for reconsideration. The Court granted the motion for reconsideration but denied Defendants' motion to dismiss on December 7, 2018. (D.E. # 63). Subsequently, the parties embarked on discovery.

While Defendants' motion to dismiss was pending, Plaintiffs moved to conditionally certify this case as a collective action under Section 216(b) the FLSA, supporting their motion with declarations from six aggrieved Plaintiffs. The Court granted the motion as to Retail Retention MLOs (sometimes referred to as Mortgage Loan Originators or Mortgage Loan Officers)

employed at Defendants' Melville, New York and Tampa, Florida offices from August 13, 2015 to the present.[2] Notice issued to approximately sixty current and former Loan Officers. Twenty-four individuals, including Named Plaintiffs, have opted into this case.[3]

The parties served extensive discovery and were in the process of responding when they agreed to mediate this dispute. All parties agreed to exchange discovery necessary to facilitate the mediation. Defendants produced – and Plaintiffs have analyzed – hundreds of pages of payroll data, time records and other employment records.

Plaintiffs also engaged in extensive factual discovery, interviewing more than twenty Opt-In Plaintiffs that were employed by Defendants. In sum, Plaintiffs' counsel have investigated this matter, reviewed, analyzed and compiled documents, including payroll information and other data, conducted extensive interviews, made several damages calculations for each Plaintiff using different assumptions, and formulated a reasonable and well-supported methodology to resolve Plaintiffs' claims.

## III.    SUMMARY OF SETTLEMENT TERMS

In addition to the FLSA Collective described above, the parties have agreed for settlement purposes to seek conditional certification of Retail Retention MLOs (sometimes referred to as Mortgage Loan Originators or Mortgage Loan Officers) employed at Defendants' Melville, New York office from August 15, 2011 to the present.  These individuals as well as Named Plaintiffs and Opt-In Plaintiffs, as applicable, and Amanda  Serravite are the "New York Class", as defined in the Settlement Agreement and exhibits thereto.

---

[2] These individuals, along with Named Plaintiffs and Opt In Plaintiffs, as applicable, and Amanda Serravite and Justin Cloonen are the FLSA Collective as defined in the Settlement Agreement and exhibits thereto.

[3] These individuals are the Opt-In Plaintiffs.

The settlement provides that Planet will create a Settlement Fund of $412,500.00 to compensate Plaintiffs and the Settlement Class, pay a portion of Plaintiffs' attorneys' fees and costs, and compensate the named representatives for their service to the class.

Plaintiffs will allocate the Settlement Funds as follows:

- Fee and Expense Award of $165,000, representing 40% of the Settlement amount;

- Expense Award for reasonable litigation costs of $17,000;

- Administrative Costs in the amount of $6,000; and

- Service Payments to Named Plaintiffs Kenneth Kuck and Anthony Juliano of $7,500 each, in addition to their pro rata share of the Settlement Fund;

The remaining balance of approximately $209,500 is to be distributed to Named Plaintiffs and Class Members allocated based on the below formula. Plaintiffs allocated 60% of the settlement to the twenty-four Opt-In Plaintiffs who have joined the case to date, and 40% to the remaining settlement Class Members. This results in a distribution of approximately $53.65 per work week to current Opt-In Plaintiffs, and $21.26 per work week to the remaining Class Members, subject to a minimum payment of $250. Net settlement payments will range from $250 to more than $10,000.00 for each class member. The distribution is based on an extensive analysis of data for over 6,200 weeks worked during the relevant Class Period. As part of the settlement, Class Members shall release all claims against Defendants arising from alleged violations of FLSA and applicable state wage and hour laws in connection with Defendants' alleged failure to pay overtime premium wages.

## IV.    CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

Federal Rule of Civil Procedure 23 governs class action suits, including the settlement of class actions. Under Rule 23, court approval is required for a class-wide settlement: "The court must approve any settlement, voluntary dismissal, or compromise of the claims, issues, or defenses

of a certified class," Fed. R. Civ. P. 23(e)(1)(A), and "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise," Fed. R. Civ. P. 23(e)(1)(B). Rule 23 requires that the parties seeking approval of a settlement under Rule 23(e)(1) "file a statement identifying any agreement made in connection with the proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(2).

The Manual for Complex Litigation, Fourth (Federal Judicial Center 2007) ("MCL 4th") § 21.632 describes the procedure for judicial review and approval of proposed class action settlements as follows:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b). If there is a need for subclasses, the judge must define them and appoint counsel to represent them. The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

The MCL's two-step process has been cited with approval by federal courts in New York. *See, e.g., In re Holocaust Victim Assets Litig.*, 105 F. Supp. 2d 139 (E.D.N.Y. 2000); *In re NASDAQ Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997); *In re Prudential Securities Inc. Ltd. Partnerships Litig.*, 163 F.R.D. 200 (S.D.N.Y. 1995). Professor Newberg, the leading class action commentator, has similarly endorsed this approach. *See* 2 Newberg on Class Actions 3d (hereinafter "Newburg") § 11.22, *et seq.* (1992). With good reason: it safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.

Plaintiffs request that the Court take the first step in the class settlement approval process by granting preliminary approval of the proposed settlement. The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within the "range of possible approval," and thus whether notice should be issued to the class of the terms and conditions of the settlement, and whether a formal fairness hearing should be scheduled. MCL 4th § 21.632; *see also* 2 Newberg § 11.25 at 11-36-37 (stating that the initial pre-approval of a class settlement requires only that the court conclude that the settlement appears to be within the "range of reasonableness"). At the first stage of the process, the Court does not determine, as a final matter, whether the settlement should be approved. Input from the class, further submissions by the settling parties, and a duly noticed formal fairness hearing are generally completed before the final decision is made. Neither formal notice nor a hearing is required for preliminary approval, which may be made upon an informal application by the settling parties, and conducted either in court or in chambers, in the Court's discretion. *See* MCL 4th § 21.632.

In order to advance the settlement approval process, Plaintiffs further request that the Court: (1) certify the New York Class (as defined in the Settlement Agreement) pursuant to Rule 23 for settlement purposes only and finally certify the FLSA Collective (as defined in the Settlement Agreement) pursuant to § 216(b) for settlement purposes only at this time, in order to facilitate distribution to all Class Members (as defined in the Settlement Agreement) of notice of the terms of the proposed settlement, and the date and time of the final approval hearing; (2) approve the form, content, and distribution of the class notice; and (3) schedule a formal fairness hearing. The following schedule sets forth a proposed sequence for the relevant dates and deadlines, assuming this Court grants preliminary approval to the proposed settlement. This sequence is also outlined in the proposed Order filed herewith.

| 7 days after Preliminary Approval: | • Defendants must produce an electronic copy of a list of all Potential Class Members and Plaintiffs, location of employment, dates of employment and last known addresses, to the extent such information is reasonably available.<br><br>• Class Counsel must provide Settlment Administrator with estimated Settlement Award Amounts for each Settlment Class Member. |
|---|---|
| 10 days after receiving estimated Settlement allocations: | • Settlement Administrator must mail Class Notice informing Settlement Class Members of their anticipated estimated Settlement Award. |
| 45 days after the mailing of Class Notice | • Deadline to opt out of the action.<br><br>• Objections to settlement must be received. |
| 55 days after mailing of Class Notice | • Settlment Administrator must provide Administrator's Declaration, including list of all individuals who have submitted opt-out form and those who have timely and properly objected. |
| 7 days before Final Fairness Hearing | • Class Counsel shall file Plaintiffs' papers in support of the final approval of the Settlement Agreement and their request for approval of the agreed upon attorneys' |

| | fees. |
| | • Parties shall file Joint Motion for Final Approval of Settlement, copy of Administartor's Declaration, and a declaration of CAFA notices. |
| Final Fairness Hearing | Approximately, but no less than, 100 days after entry of Preliminary Approval Order |
| 7 days after Effective Date[4] | • Defendant shall transfer Settlement Amount to the settlement fund. |
| 7 days after receipt of the settlement fund | • Settlement Administrator must pay Settlement Class Members.<br><br>• Settlement Administrator must make Settlment Award payments to named representatives and must pay attorneys' fees. |

## V.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE.

Courts review proposed settlements in light of the strong judicial and public policies that favor extrajudicial resolution of cases. *In re Ivan F. Boesky Secs. Litig.*, 948 F.2d 1358, 1368 (2d Cir. 1991); *In re Michael Milken & Assocs. Secs. Litig.*, 150 F.R.D. 46, 53 (S.D.N.Y. 1993). In the class action context, settlement has become a "stock device," *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 618 (1997), where efficiency and certainty are given weighty consideration. *See also* 2 Newberg § 11.41 (Courts favor settlement particularly in class actions where substantial

---

[4] The Effective Date means the date upon which all of the following have occurred: (a) entry of the Final Approval Order; and (b) the expiration of the appeal rights of all Parties, which is thirty (30) days after entry of the Final Approval Order provided no appeal has been filed. *See* Settlement Agreement §I(F).

resources can be conserved by avoiding the time, cost, and rigors of formal litigation.). The proposed settlement furthers these goals.

Rule 23(e)(1)(C) requires that a proposed class settlement be "fair, adequate, and reasonable" to garner court approval. Fed. R. Civ. P. 23(e)(1)(C); *Wal-Mart Stores, Inc. v. VISA U.S.A. Inc.,* 396 F.3d 96, 116 (2d Cir. 2005); *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000); *see also* 2 Newberg § 11.43; Manual for Complex Litigation, Fourth, § 21.61-21.62 (2007). Courts assess whether a proposed settlement is "fair, adequate, and reasonable," by conducting a "thorough analysis of both procedural fairness and substantive fairness." *Zomber v. Christies, Inc*. (*In re Auction Houses Antitrust Litig.*), 42 Fed. App'x 511, 520 (2d Cir. 2002).

Courts assessing procedural fairness consider "whether the negotiations were a result of 'arm's length negotiations' and whether plaintiffs' counsel possessed the experience and ability to represent effectively the class's interests." *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (*citing In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 173-74 (S.D.N.Y. 2000)).

Courts in this Circuit review a proposed settlement agreement for substantive fairness according to the *Detroit v. Grinnell Corp*. factors: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d 448, 463 (2d Cir. 1974); *Wal-Mart Stores, Inc.* 396 F.3d at 117. Each factor will be addressed in turn below.

Before doing so, however, it must first be stressed that the factors considered by the court ought not be applied in a formulistic fashion; rather, "the evaluation of a proposed settlement requires an amalgam of delicate balancing, gross approximations and rough justice." *Grinnell Corp.*, 495 F.2d at 468 (*citing Saylor v. Lindsley,* 456 F.2d 896, 904 (2d Cir. 1972)). Moreover, when weighing the factors in connection with a request for preliminary approval of a settlement, as discussed above, the Court should direct notice to the class and a fairness hearing unless "obvious deficiencies" in the proposed settlement place it outside the "range of possible approval." *In re Prudential Securities Inc.*, 163 F.R.D. at 209; *see also In re Baldwin-United Corp.*, 105 F.R.D. 475, 482 (S.D.N.Y. 1984). Here, judged against applicable legal standards, the proposed Settlement falls easily within the range of possible approval.

### A. Procedural Fairness

#### 1. The Settlement is the Product of Bargaining in Good Faith.

To assess procedural fairness, courts consider whether the settlement was the product of "arm's length" negotiations rather than the result of collusion. *Weinberger v. Kendrick*, 698 F.2d 61, 74 (2d Cir. 1982) (*citing Grinnell Corp.*, 495 F.2d at 463-66). In assessing the good faith of negotiations courts have also noted whether they took place "over an extensive period," MCL § 21.612, and the degree to which the plaintiffs' attorneys have engaged in investigation and/or discovery so as to permit them to reach an informed evaluation of the case. *Weinberger,* 698 F.2d at 74; *Martens v. Smith Barney*, 181 F.R.D. 252, 262 (S.D.N.Y. 1998); *see also* MCL § 21.612.

The proposed settlement is the result of extensive arm's length negotiations between attorneys who are fully familiar with the legal and factual issues in this case. As set forth in Section II, settlement discussions took place at different stages of litigation culminating in a mediation with JAMS Mediator, Michael Young. *See* Langeland Decl., ¶¶ 4-6. Plaintiffs evaluated

Defendants' payroll records and time records, along with other documents provided by Defendants. *See* Langeland Decl., ¶ 4. Moreover, an experienced mediator, the Defendants' representatives, and the Named Plaintiffs were extensively involved in the settlement discussions that led to this agreement. *See* Langeland Decl., ¶ 5.

Prior to reaching settlement, Class Counsel interviewed more than twenty former employees concerning the extent of unpaid overtime in order to estimate the magnitude of potential damages. *Id.* at ¶ 5. Finally, Class Counsel evaluated Defendants' financial health and the risks of collection. *Id.* at ¶ 5. The final agreement was the product of arms length bargaining by informed counsel.

## 2. Opinion of Experienced Counsel.

Another factor "in determining the fairness of the settlement is the opinion of counsel involved in the settlement," and where plaintiffs' counsel is experienced in the type of litigation at issue, the court will afford greater weight to the opinion of counsel. *Chatelain v. Prudential-Bache Securities, Inc.*, 805 F. Supp. 209, 212 (S.D.N.Y. 1992) (In finding settlement reasonable, court relied in part upon fact that "Plaintiffs' counsel is experienced in these matters, and has expressed their judgment that the proposed settlement is fair, reasonable, and in the best interests of the class."); *see also Cannon v. Texas Gulf Sulphur Co.*, 55 F.R.D. 308 (S.D.N.Y. 1972) (opinion of counsel should be given "great weight" in evaluating class settlement); *accord Bash v. Firstmark Standard Life Ins. Co.,* 861 F.2d 159, 162 (7th Cir. 1988) (court reviewing settlement "is entitled to rely heavily on the opinion of competent counsel").

Plaintiffs' counsel has substantial experience litigating employment cases, particularly class action wage and hour cases. *See* Langeland Decl., ¶¶ 15-20. Based on Class Counsels' extensive experience in precisely this type of litigation and their thorough familiarity with the

factual and legal issues in this case, they reached the firm conclusion that the proposed settlement is clearly in the best interests of the Named Plaintiffs and the Class Members. *See* Langeland Decl., ¶¶ 20-21.

### B.  Substantive Fairness

#### 1.  The Complexity, Expense and Likely Duration of The Litigation

To assess substantive fairness, courts first consider the complexity, expense and likely duration of the litigation. Courts weigh the benefits of a potential settlement against the time, expenses and potential benefits of ongoing litigation. *Bronson v. Crestwood Lake Section 1 Holding Corp.,* No. 89 Civ. 5386, 1991 LEXIS 4995, at *13 (S.D.N.Y. April 10, 1991) (weighing the possibility for protracted, complex litigation would require the significant time and expense of the parties, against the interests of the class); *In re Medical X-Ray Film Antitrust Litig.*, No. 93 Civ. 5904, 1998 LEXIS 14888 (E.D.N.Y. Aug. 7, 1998). Specifically, courts consider the time needed to complete discovery, the length of a potential trial, the complexity of the issues in the case, and the costs of continuing litigation. *Wal-Mart Stores, Inc.,* 396 F.3d at 118; *Schneider v. GE Capital Mortgage Svcs., Inc.,*, No. 96 Civ. 4651, 1997 LEXIS 7144, at *9-10 (S.D.N.Y. May 21, 1997).

The expense and likely duration of continuing litigation in this case favor approval of the proposed settlement. While the key issue in the case is straightforward - Plaintiffs seek compensation for hours worked over forty hours in a workweek - subjecting Plaintiffs to ongoing litigation would be unnecessarily costly and burdensome in light of the proposed settlement terms. If the proposed settlement is not approved, Plaintiffs will move for Rule 23 class certification, which Defendants will certainly oppose. If certification were granted, Plaintiffs would undertake additional discovery aimed at the merits before filing a motion for summary judgment on liability.

A trial in this case would last approximately 2 to 3 weeks, and would cost hundreds of thousands of dollars. *See* Langeland Decl., ¶ 20.

### 2.    The Reaction of the Class To the Settlement

Second, courts consider the class reaction to the settlement. The expressed views of Class Members are important to the Court's inquiry. In evaluating the degree of support for or opposition to a settlement by Class Members courts have looked to the proportion of the class to formally object during the proceedings on the fairness and adequacy of the settlement, and the proportion to opt out of those who received notice. Where relatively few Class Members opt out or otherwise object to the settlement, the lack of opposition supports approval of the settlement. *Compare Martens*, 181 F.R.D. at 263 (approvingly citing "[t]he small number of objectors (12) and opt-outs (40) among the over 20,000 class members") with *Pettway v. Am., Cast Iron Pipe Co.,* 576 F.2d 1157 (5th Cir. 1978) (rejecting settlement opposed by 70 percent of affected class).

This factor cannot be weighed at the present stage of a request for preliminary approval, notice to the class, and a fairness hearing. Only if this motion is granted and the class is sent notice will members of the class have the opportunity to object or opt out. This fact highlights that the standard for granting a motion for preliminary approval must be highly permissive under federal law since only after such a motion is granted can a court evaluate one of the central criteria district courts have deemed relevant to whether a class settlement is fair, adequate, and just.

### 3.    The Stage of the Proceedings and the Amount of Discovery Completed

Third, courts consider the current stage of the proceedings and the amount of discovery completed. Parties need not have engaged in extensive discovery to have a proposed settlement approved. *In re Austrian*, 80 F. Supp. 2d at 176. Courts will give approval where plaintiffs have conducted sufficient discovery to have a "thorough understanding of their case," *Wal-Mart Stores,*

*Inc.,* 396 F.3d at 118, and have diligently investigated the facts supporting their claims. *Teachers' Retirement System of Louisiana v. A.C.L.N., Ltd.*, No. 01 Civ. 11814, 2004 LEXIS 8608 (S.D.N.Y. May 14, 2004) (internal citations omitted).

Class Counsel has conducted a thorough and diligent investigation into the facts supporting Plaintiffs' claims and the risks of litigation over the 19 months of litigation. Class Counsel has reviewed voluminous documents provided by Defendants, including payroll records and time-keeping records. *See* Langeland Decl., ¶ 4. Moreover, Class Counsel has spoken with more than twenty former employees of Defendants to gauge the magnitude of class damages. *Id.* at ¶ 5. Because Class Counsel entered into the proposed settlement with a thorough understanding of their case, settlement at this stage of litigation is appropriate.

### 4. The Risks of Establishing Liability

Fourth, courts consider the risks of establishing Defendants' liability. Courts assess whether there are any "legal obstacles to establishing liability," *Bronson,* 1991 LEXIS 4995, at *16; *Schneider*, 1997 LEXIS 7144, at * 13. Courts note that, regardless of the perceived strengths of plaintiffs' case, liability is "no sure thing." *Wal-Mart Stores, Inc.,* 396 F.3d at 118. In fact, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. at 934 (S.D.N.Y. 1969).

Plaintiffs would likely establish that Defendants failed to keep accurate records for at least a portion of the statute of limitations and that Plaintiffs worked more than 40 hours a week without overtime pay. Defendants, however, contend that their time records were accurate and that certain Plaintiffs were, indeed, paid overtime. This defense would potentially require a trial on the merits. While Plaintiffs remain confident that they would establish Defendants' liability, juries are unpredictable and the proposed settlement is preferable to costly, protracted litigation.

### 5.   The Risks of Establishing Damages

Fifth, courts consider the risks of establishing damages. Regardless of plaintiffs' ability to establish liability, they still face the "substantial risks in proving its damages at trial." *In re Painewebber Ltd. Pshps. Litig.,* 171 F.R.D. 104, 128 (S.D.N.Y. 1997); *Wal-Mart Stores, Inc.,* 396 F.3d at 119. Courts caution that "damages are a matter for the jury, whose determinations can never be predicted with certainty." *In re Painewebber Ltd. Pshps. Litig.*, 171 F.R.D. at 128.

Plaintiffs could potentially have difficulty establishing the full extent of classwide damages at trial. Although Plaintiffs' unpaid overtime claims are straightforward, the precise magnitude of the damages is elusive because complete and accurate time records for the alleged off-the-clock work performed by the class are not available, preventing a precise mathematical calculation. Plaintiffs would also have the challenge of tracking down and interviewing Class Members about the exact amount of overtime they actually worked. Furthermore, Plaintiffs recognize that jury assessments of damages are unpredictable.

### 6.   The Risks of Maintaining the Class Action Through The Trial

Sixth, courts consider the risks of maintaining the class action through trial. Specifically, courts consider whether a class is already certified or whether plaintiffs will move for class certification, and whether Defendants will oppose such motion. *See Bronson,* 1991 LEXIS 4995, at *17. Courts also consider the "pressure of active adversarial proceedings on named plaintiffs" and the potential effect on their ability to represent the class. *See Id.* ("the difficulties of maintaining the motivation and resolve on the part of the named plaintiff throughout a protracted and adversarial litigation are very real indeed").

Plaintiffs would likely be able to maintain the class through trial. If the proposed settlement is not approved, Plaintiffs will move for Rule 23 class certification. Although such a motion will

be time-consuming and costly, Plaintiffs believe the Court would grant this motion. Defendants would likely oppose the motion, but Plaintiffs do not believe Defendants could defeat class certification. Plaintiffs also believe that the two Named Plaintiffs are committed to the case and would not have difficulty remaining class representatives through trial. Throughout the case, Class Counsel has consulted with the Named Plaintiffs extensively, and they have provided Class Counsel with invaluable information and access to numerous Class Members. However, keeping track of Class Members, especially former employees, will become more difficult over time and the disruption in the mortgage market could prohibit Named Plaintiffs from giving this case their full attention. Overall, settlement eliminates the risk, expense, and delay that maintining the class entails. This factor favors preliminary approval.

### 7. The Ability of the Defendants To Withstand A Greater Judgment

Next, courts consider the Defendants' ability to withstand greater judgment. However, even if they could, this determination alone "does not suggest that the settlement is unfair." *In re Austrian*, 80 F. Supp. 2d at 178 n.9; *In re Painewebber Ltd. Pshps Lit.*, 171 F.R.D. at 129. Moreover, the ability to pay is irrelevant because the settlement is consistent with the alleged claim and likelihood of success and not discounted because of an inability to pay more.  Therefore, this factor is neutral and does not preclude the Court from granting preliminary approval, especially when considered in light of the other factors.

### 8. The Range Of Reasonableness of the Settlement Fund In Light Of the Best Possible Recovery

Courts measure the settlement terms against the "best possible recovery for plaintiffs." *See Bronson*, 1991 LEXIS 4995, at *19; *Schneider*, 1997 LEXIS 7144, at *17. The "best possible recovery" is calculated assuming plaintiffs are completely victorious on both liability and damages at trial. *Teachers' Retirement System of Louisiana,* 2004 LEXIS 8608, at *14-15. A proposed

settlement that represents only a fraction of the "best possible recovery" does not mean that a proposed settlement is "grossly inadequate or should be disapproved. *Id.* at *15; *Schneider*, 1997 LEXIS 7144, at *18. When examining the reasonableness of a settlement courts consider "a range of reasonablesness… which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 186 (W.D.N.Y. 2005).

The settlement amount is fair and reasonable despite being less than Plaintiffs' "best possible recovery" at trial. However, the settlement will provide for immediate payment to Class Members, eliminating the risk of collection and giving them the use of the money almost immediately. Given that Plaintiffs and proposed Class Members are or were in an unfavorable mortgage market, this money would likely be beneficial to their financial well-being. The benefits of the settlement are greater than the risks associated with continuing litigation, and therefore this factor weighs in favor of preliminary approval.

### 9. The Range Of Reasonableness of the Settlement Fund To A Possible Recovery In Light of All the Attendant Risks of Litigation

The final factor is the most important. "In deciding whether to approve a proposed class settlement, the most significant factor for the district court is the strength of the claimants' case balanced against the settlement offer." *Plummer v. Chemical Bank*, 668 F.2d 654, 660 (2d Cir. 1982); *see also Schneider*, 1997 LEXIS 7144, at *19-20; *Bronson*, 1991 LEXIS 4995, at *19. This factor requires evaluating the proposed settlement in light of all the *Grinnell* factors and "giving each factor appropriate weight in the circumstances of the particular case." *Schneider,* 1997 LEXIS 7144, at *20.

Under the totality of the circumstances, the *Grinnell* factors favor settlement. Although Plaintiffs might recover more than the settlement amount at trial, there are significant risks

including uncertain damages, lost time-value of money, and risks of collection. The settlement commits a significant amount of money to compensate Class Members for their damages. It also distributes such funds as fairly as possible among the Class Members by taking into account the strength of Defendants' defenses. Given the size of the class, the relief obtained is substantial. When this monetary relief is weighed against the potential obstacles and costs of further litigation, the benefits to the class of settlement are overwhelming.

### C. Compensation for Named Representatives and Class Counsel Are Appropriate

A final consideration as to the overall reasonableness of the settlement is whether the payments made to the named class representatives and to class counsel are appropriate and reasonable. *See Yap v. Sumitomo Corp. of America,* No. 88 Civ. 700, 1991 LEXIS 2124, at *23 (S.D.N.Y. Feb. 22, 1991).

### i. The Payment to the Named Representatives for Their Service to the Class is Reasonable and Routinely Awarded.

Payments to named representatives are intended to recognize their time and effort on behalf of the class. Courts routinely approve incentive awards to compensate Named Plaintiffs for the services provided and the risks incurred in the course of class litigation. *See, e.g., Plummer,* 668 F.2d at 660-61; *Roberts v. Texaco*, 979 F. Supp. 185, 200 (S.D.N.Y. 1997) (accepting a Special Master's recommendation to approve incentive awards based on the time and effort expended by the class representatives in assisting in the prosecution of the litigation); *Sheppard v. Consolidated Edison Co. of New York, Inc.*, No. 94-CV-0403(JG), 2002 WL 2003206, *6-7 (E.D.N.Y. 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action); *Martens v. Smith Barney, Inc.*, No. 96 CIV. 3779 (CBM), 1998 WL 1661385, at *3 (S.D.N.Y. July 28, 1998) (approving aggregate incentive payment of $1.9 million

for twenty-two named plaintiffs in gender discrimination class action); *Selzer v. Board of Educ. of New York*, No. 82 CIV. 7783 (MEL), 1993 WL 42787, *4 (S.D.N.Y. 1993) (approving incentive payments to named plaintiffs in part because of the tremendous amount of time and effort expended by them in prosecuting gender discrimination class).

In this case, the named representatives worked with Class Counsel throughout the case, committing time and providing indispensable information, including providing important documentary evidence regarding liability and damages, and helping counsel test the validity of Defendants' defenses. *See* Langeland Decl., ¶ 10. The $7,500 incentive payment to each of the Named Plaintiffs are modest in comparison with those approved by the courts cited above, and represent less than four percent of the total settlement funds. Accordingly, the payments to the named representatives are appropriate and justified as part of the overall settlement.

### ii. The Payment of Attorneys' Fees Under the Settlement Agreement is Reasonable.

Under the settlement agreement, Class Counsel is entitled to attorneys' fees in the amount of forty percent of the common fund. In order to reach a successful resolution to this case and to allow each class member to receive a significant award, Class Counsel has limited its fees. Counsel's fee agreement with the Named Plaintiffs states that Class Counsel is entitled to 40% percent (40% of the gross amount recovered by the Class). *See* Plaintiffs' Attorney Client Agreements, attached as Exhibit 2 to the Declaration of Erik H. Langeland.

In class settlement funds like this one, courts have shown a strong preference for awarding fees as a share of the fund. *Strougo ex rel. Brazilian Equity Fund, Inc. v. Bassini,* 258 F. Supp. 2d 254, 261-62 (S.D.N.Y. 2003) (collecting cases); *In re NASDAQ Market-Makers Antitrust Litig.,* 187 F.R.D. 465, 483-85 (S.D.N.Y. 1998) (collecting cases). A Third Circuit task force convened to study the issue concluded that the percentage of the settlement fund approach was preferable as

a matter of judicial policy because it is less taxing on judicial resources and creates desirable incentives, as compared to other approaches, for early settlement. *See* Court Awarded Attorney Fees: Report of the Third Circuit Task Force, 108 F.R.D. 237, 246-49 (1985). It has also been observed that the percentage of the fund method most effectively aligns the interests of the class with those of its counsel. *See, e.g.*, John Coffee, "Understanding the Plaintiffs Attorney: The Implications of Economic Theory for Private Enforcement of the Law Through Class and Derivative Actions," 86 Colum. L. Rev. 669, 724-25 (1986).

Further, the forty percent (40%) share of the fund sought to be approved here is consistent with the norms associated with class litigation in this circuit. *See, e.g., Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F. Supp. 2d at 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig*., No. 94 CIV. 7696 (RWS), 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 CIV. 5874 RWS, 1999 WL 1037878, at *3 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Klein ex rel. Ira v. PDG Remediation, Inc.,* No. 95 CIV. 4954(DAB), 1999 WL 38179, at *3 (S.D.N.Y. Jan. 28, 1999) (stating that "33% of the settlement fund.... is within the range of reasonable attorney fees awarded in the Second Circuit."); *Cohen v. Apache Corp.*, 89 CIV. 0076 (PNL), 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1/3% of settlement fund approved for attorneys' fees); *In re Gulf Oil/Cities Service Tender Offer Litig.,* 142 F.R.D. 588, 596-597 (S.D.N.Y.1992) (33 1/3% of settlement fund approved for attorneys' fees); *In re Avon Prods. Inc., Sec. Litig.*, No. 89 CIV. 6216 (MEL), 1992 WL 349768, at *3 (S.D.N.Y. Nov. 6, 1992) ("The request for 30% is in line with numerous awards in this Court and elsewhere in recent litigation."); *In re Crazy Eddie*, 824 F.

Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorneys' fees, plus costs). Accordingly, the fee arrangement in the settlement is reasonable.

Plaintiffs have provided substantial support for the conclusion that the settlement was the product of good-faith bargaining between the parties; that Class Counsel are experienced in the type of litigation at issue and therefore their judgment that the settlement is in the best interests of the class is entitled to substantial weight; that the magnitude of the settlement is reasonable in light of the uncertainty of establishing damages, the time and expense of continued litigation, and the risk of collecting a final judgment; and that the settlement's provision for an incentive payments to the Named Plaintiffs and for attorneys' fees are reasonable. Accordingly, the settlement is "within the range of possible approval" and the Court should preliminarily approve it.

## VI.  CERTIFICATION OF THE SETTLEMENT CLASS PURSUANT TO RULE 23(e) IS PROPER.[5]

Under Rule 23(e), where a suit has been filed as a putative class action, but before a motion for certification has been made, the case is deemed a class action for purposes of the Court's evaluation of a proposed settlement, and notice to the class respecting the settlement. *Weinberger v. Kendrick*, 698 F.2d 61, 72 (2d Cir. 1982) ("Temporary settlement classes have proved to be quite useful in resolving major class action disputes... most courts have recognized their utility and have authorized the parties to seek to compromise their differences, including class action issues, through this means."); MCL § 21.612; 2 Newberg § 11.22.

Plaintiffs seek approval of the following New York Class for settlement purposes: The "New York Class" consists of those individuals who worked for Defendant Planet Home Lending,

---

[5] The Court has previously conditionally certified an FLSA Collective via its Order dated July 16, 2018.  For the same reasons set forth in their prior motion for conditional certification, Plaintiffs now seek final certification of the FLSA Collective (as defined in the Settlement Agreement) pursuant to § 216(b) for settlement purposes only. Rather than repeat those arguments here, Plaintiffs have focused this motion on the Rule 23 certification of the New York Class (as defined in the Settlement Agreement).

LLC as Retail Retention MLOs (sometimes referred to as Mortgage Loan Originators or Mortgage Loan Officers) at its Melville, New York premises at any time between August 15, 2011 and the present, as well as Opt-In Plaintiff Amanda Serravite.

Notwithstanding that, as a matter of course, a putative class shall be deemed a class for purposes of judicial evaluation of a settlement and the sending of notice under Rule 23(a). In the Second Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" when evaluating class certification. *Reade-Alvarez v. Eltman, Eltman & Cooper, P.C.*, 237 F.R.D. 26, 31 (E.D.N.Y. 2006). Plaintiffs stress that they easily meet the criteria for class certification. First, the class must be "so numerous that joinder of all members is impracticable." Rule 23(a)(1). Second, common questions of law or fact must predominate over individual claims. Rule 23(a)(2). Third, the claims of the representative parties must be typical of those of the class as a whole. Rule 23(a)(3). Fourth, the representatives must fairly and adequately represent the class. Rule 23(a)(4). Each of the four requirements is addressed in turn.

### A.  The Proposed Settlement Class is Sufficiently Numerous.

The numerosity criteria requires that the proposed class be so numerous that joinder of all members is impracticable. *See* Rule 23(a)(1). While there is no "mechanical test" to determine whether the numerosity requirement has been met, examining the case law makes clear that the requirement is easily satisfied in this case. *Kelley v. Norfolk & W. R. Co.*, 584 F.2d 34, 35 (4th Cir. 1978). Defendants' payroll and personnel records show that the proposed class has approximately forty-eight (48) members. Federal courts have found significantly smaller classes to satisfy the numerosity requirement. *See, e.g., Consolidated Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 2003); *Frank,* 228 F.R.D. at 174 (finding that a class of twenty-eight met the numerosity requirement in a NYLL wage case).

Courts also consider the practical likelihood of cases being brought without the availability of the class action mechanism. Cases involving relatively small monetary values, such as small wage claims, are unlikely to be brought separately because of the costs and hardship of litigation. *See Frank*, 228 F.R.D. at 181 (citing cases with fewer than forty class members); *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001) (considering financial resources of Class Members in finding joinder "impracticable"). Because the number of Class Members in the present case is sufficiently large and the value of individual claims relatively small, joinder of all Class Members would be impracticable and the numerosity requirement is satisfied.

### B.  Common Questions of Law or Fact Predominate Over Individual Claims.

The second condition is that there must be questions of law and fact common to the class that predominate over individual claims. *See* Rule 23(a)(2). The Rule requires predominance, not identity or unanimity, among class members, *Cohen v. Uniroyal, Inc.*, 77 F.R.D. 685, 690-691 (E.D. Pa. 1977), and "obviously, the underlying facts fluctuate over the class period and vary as to individual claimants...[which] does not defeat a class action for Rule 23(a)(2)." *Id.*

The core question in applying the commonality requirement under Rule 23 is "whether the use of a class action would 'achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated.'" *LaMar v. H & B Novelty & Loan Co.*, 55 F.R.D. 22, 25 (D. Or. 1973); Advisory Committee Notes, 39 F.R.D. 73, 103. The logic of this approach is that the commonality requirement is met when the class members have claims implicating sufficiently common facts and law that were they to proceed separately courts would have to adjudicate the same issue(s) over and over would "obviously...waste judicial resources," *In re Lorazepan & Clorazepate Antitrust Litig. v. Mylan Labs.*, 205 F.R.D. 369, 402 (D.D.C. 2002),

and to make the litigation process "practical and as fair as possible." *Laflamme v. Carpenters Local #370 Pension Plan*, 212 F.R.D. 448, 454 (N.D.N.Y. 2003).

Here, the proposed Class Members' claims all stem from the same source: the allegations that Defendants had a policy of not compensating Loan Officers appropriately for any hours worked in excess of 40 hours in a workweek. Moreover, they seek the same remedies under federal and state law: recovery of unpaid wages owed. If all employees were required to proceed separately, it would necessitate that courts resolve the identical questions of law and fact over and over for each of the forty-eight (48) New York Class Members. Moreover, if Class Members were required to proceed separately, given the relatively modest value of individual claims, a great many would be deprived of a practical means to recover. Accordingly, the present facts amply satisfy the commonality requirement.

**C. Plaintiffs' Claims are Typical of Those of the Class.**

To satisfy the third requirement - typicality - "the representative plaintiffs claims [must be] based on the same legal theory and arise from the same practice or course of conduct as the other class members." *In re Playmobil Antitrust Litig.*, 35 F. Supp. 2d 231, 241 (E.D.N.Y. 1998); *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); *In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 510 (S.D.N.Y. 1996) ("The proper inquiry is whether other members of the class have the same or similar injury, whether the action is based on conduct not special or unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.") "This criterion does not require that the factual background of each named plaintiffs claim to be identical to that of all class members." *Caridad v. Metro-North Commuter R.R.*, 191 F.3d 283, 293 (2d Cir. 1999); *Presbyterian Church of Sudan v. Talisman Energy, Inc.*, 226 F.R.D. 456, 466 (S.D.N.Y. 2005).

Named Plaintiffs' claims in this case are typical of the claims of the whole class because they "arose out of the same course of conduct and [are] based on the same theories." With respect to the alleged conduct complained of, the claims of Named Plaintiffs and the members of the proposed class arise out of Defendants' alleged policy of requiring Loan Officers to work more than 40 hours per week without overtime compensation. With respect to the legal theory for recovery, the claims of Named Plaintiffs and members of the proposed class are based upon the contention that Defendants' alleged policy improperly deprived them of overtime pay for all hours worked beyond 40 in a week. Consequently, the claims of the Named Plaintiffs in this action arose out of the same course of conduct and are based on the same theories as the claims of the other Class Members, and thus satisfy the typicality requirement.

### D.  Plaintiffs Fairly and Adequately Represents the Class.

In assessing whether Plaintiffs will fairly and adequately represent and protect the interests of the class, courts consider whether: (1) "class counsel is qualified, experienced, and generally able to conduct the litigation," *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992); and (2) there is "no conflict of interest between the named Plaintiffs and other members of the plaintiff class." *Marisol A. v. Giuliani,* 126 F.3d 372, 378 (2d Cir. 1997). In fact, "[o]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." *Dziennik v. Sealift, Inc*., No. 05CV4659(DLI)(MDG), 2007 WL 1580080, at *6 (E.D.N.Y. May 29, 2007).

The class representatives will fairly and adequately protect the interests of the class. The class representatives have a commonality of interests with Class Members that insures protection of class interests, and, indeed, they have no interests adverse to the interests of the proposed class. Class Members are not divided into conflicting categories, but rather they all claim unpaid

overtime wages for work they performed at Defendants. While Defendants have asserted defenses based on their time records, this does not change the fact that all of the Class Members seek unpaid overtime wages. It merely incorporates the reality that the Defendants may assert defenses to Plaintiffs' claims. Under the proposed settlement, the class representatives will receive a small supplemental payment for their time and effort in bringing this action, responding to investigative inquiries by counsel, consulting with Class Members regarding the terms of the settlement, and taking the risk of stepping forward. Other than this specific payment, all of the Class Members will receive a portion of the balance of the Settlement Fund taking into account their relative periods of employment for the Defendants. Any class member who wishes to "opt out" may also do so.

Class Counsel have substantial experience successfully prosecuting class action wage and hour claims. *See* Langeland Decl., ¶¶ 15-20. Named Plaintiffs and their experienced counsel have prosecuted this action vigorously and have been willing and continue to be willing to spend all necessary resources in furtherance of vigorously prosecuting the action. *See* Langeland Decl., ¶¶ 3-5. As set forth above in Section II, the parties engaged in discovery and substantial fact-finding, including obtaining extensive wage and employment data respecting Class Members to properly assess the value of damages. *See* Langeland Decl., ¶¶ 4-5. In addition, Class Counsel confers regularly with the Named Plaintiffs and other members of the class about developments and settlement negotiations. Thus, Class Counsel has met the adequacy requirement of vigorously prosecuting this case.

### E.  The Class Action is Superior to Other Methods of Settling the Controversy.

The final requirement is that the class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See* Rule 23(b)(3). In applying this criteria, courts

have stressed that the class action is superior when common issues will be dispositive of most of the case, and when the small size of individual claims is such that individual litigation would likely be too costly to pursue, and thus no other meaningful remedy (or deterrence for the defendant) is available. *See Frank* 228 F.R.D. at 181; *Ansoumana v. Gristede's Operating Corp.*, 201 F.R.D. 81, 85 (S.D.N.Y. 2001).

In this case, the disposition of common issues - whether Defendants had a policy requiring or permitting employees to work more than forty hours per week without overtime compensation - will resolve virtually the entire case. The only remaining issue at the individual level would be differences in damages based upon the number of hours worked and their hourly wage rate they earned working in class positions during the relevant time period. Courts have stressed that differences in individual level damages that are easily calculable do not undercut the superiority of the class device. *See Cohen,* 77 F.R.D. at 690-691. Moreover, this action is precisely the type of case in which the relatively modest amount of damages per employee would not justify pursuing individual litigation as an economic matter for the vast majority of plaintiffs. Absent a class remedy, Defendants would be free to violate the law with impunity. Thus, in this case, a class remedy is not just superior, but, practically speaking, the only one available.

## VII.    THE PROPOSED NOTICE CONFORMS TO DUE PROCESS REQUIREMENTS.

While Rule 23 requires notice to the proposed class of a settlement, it is silent as to the required content of the notice. Courts have held that in order to satisfy Rule 23, the notice must advise the class of:

> the nature of the action; the definition of the class certified; the class claims, issues, or defenses; that a class member may enter an appearance through counsel if the member so desires; that the court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded; and the binding effect of a class judgment on Class Members under Rule 23(c)(3). Fed. R. Civ. P. 23(c)(2)(B).

The proposed notice, attached as part of Exhibit B to the Settlement Agreement, conforms to all requirements specified by the courts. The section entitled "What is this lawsuit about?" advises Class Members of the pending class action and the composition of the class, the nature of the claims, and the issues between the parties. The sections entitled "How much will my payment be?" and "When will I get my payment?" inform Class Members of the benefits of the settlement and how to obtain payment. The sub-section entitled "What does it mean to exclude myself from the settlement and how would I do it?" informs Class Members how to opt out of the class. The sub-section "Do I have to come the hearing where the Court will decide whether to approve the settlement?" explains that Class Members may choose to have another attorney represent them, advises Class Members how to object to the settlement, and advises of the date of the fairness hearing. Because the proposed notice covers all of the elements required under federal law, the court should approve its distribution to the class.

## CONCLUSION

For the forgoing reasons, Plaintiffs request that the Court (1) grant preliminary approval of the proposed settlement, (2) provisionally certify the proposed settlement class, (3) direct distribution to the class of the notice of the settlement and the opportunity to "opt out" of and object to the settlement, and (4) schedule a final approval hearing.

Dated: May 9, 2019                    Respectfully Submitted,

**CLASS COUNSEL**                    **DEFENDANTS' COUNSEL**

Erik H. Langeland                    Jane B. Jacobs, Esq.
**The Law Offices of Erik H. Langeland**    Klein Zelman Rothermel Jacobs & Schess,
733 3rd Avenue, 15th Floor           LLP

New York, New York 10017                          485 Madison Avenue - 13th Floor
elangeland@langelandlaw.com                        New York, New York 10022


James B. Zouras, *pro hac vice*
Catherine T. Mitchell, *pro hac vice*
**Stephan Zouras, LLP**
100 N. Riverside Plaza, Suite 2150
Chicago, Illinois 60606
jzouras@stephanzouras.com
cmitchell@stephanzouras.com

## CERTIFICATE OF SERVICE

I, the attorney, hereby certify that on May 9, 2019, I electronically filed the attached with the Clerk of the Court using the ECF system which will send such filing to all attorneys of record.

_/s/ James B. Zouras_